1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    KEVIN M.,

11                          Plaintiff,

12              v.

13    COMMISSIONER OF SOCIAL
      SECURITY,

14                          Defendant.

CASE NO. 3:19-cv-05103-RBL-JRC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

NOTING DATE: March 6, 2020

15

16        This matter has been referred to United States Magistrate Judge J. Richard Creatura

17    pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as

18    authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271–72 (1976).

19        At issue in this case is the continued viability of the Ninth Circuit's hierarchy for medical

20    opinion evidence—a hierarchy that defers to medical opinion evidence provided by those with a

21    treating or an examining relationship with a Social Security plaintiff over those who have only

22    reviewed a plaintiff's medical records.  Regulations about the evaluation of medical opinion

23    evidence enacted in 2017 by the Social Security Administration effectively supersede the Ninth

24    Circuit's hierarchy for medical opinions.  Now, a court should review whether an Administrative

Law Judge ("ALJ") properly evaluated an opinion's "persuasiveness" in light of the factors set forth in 20 C.F.R. § 404.1520c—primarily, the opinion's consistency and the degree of support provided within the opinion.

In this case, plaintiff applied for benefits on the basis of a number of physical and mental conditions and provided opinions including an examining psychologist's opinion that plaintiff had limitations in a number of areas relevant to mental abilities necessary for full-time work. However, the ALJ failed to properly articulate his evaluation of the opinion's persuasiveness under the applicable new regulation, 20 C.F.R. § 404.1520c. Because the error was harmful, but further factual findings are necessary, the undersigned recommends a remand for a re-evaluation of the medical opinion evidence.

## BACKGROUND

In March 2017, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. *See* Dkt. 6-2, at 10.[1] Although plaintiff initially alleged an onset date in September 2016, at his hearing before the ALJ, plaintiff amended his onset date to March 29, 2017. Dkt. 6-2, at 10.

Plaintiff was 43 years old in September 2016, when he initially alleged that his disability began. *See* Dkt. 6-3, at 59. Plaintiff alleged disability on the basis of osteoarthritis joint disorder, lumbar disc degenerative disc disorder, right knee patella tendon rupture, bilateral plantar fasciitis, "rhabdomyolysis," "myalgia/myos[i]tis disorder," sleep apnea, type 2 diabetes, migraine disorder, and major depressive disorder. Dkt. 6-6, at 199. Plaintiff had attended college and had most recently worked as a behavioral health case manager until March 2017.

---

[1] Citations to the record are to the CM-ECF pagination contained in document headers.

1    Dkt. 6-6, at 200.  Plaintiff alleged that in March, he had to stop working because of his

2    conditions.  Dkt. 6-6, at 199.

3         The Commissioner denied plaintiff's application initially and upon reconsideration.  *See*

4    Dkt. 6-2, at 10.  Plaintiff then appeared before ALJ S. Andrew Grace for a hearing.  *See* Dkt. 6-2,

5    at 21.  The ALJ found that plaintiff suffered from at least the severe impairments of degenerative

6    disc disease and degenerative joint disease of the knee, status post left Achilles tendon rupture,

7    obesity, diabetes mellitus, anxiety, and depression.  Dkt. 6-2, at 12.  However, the ALJ

8    ultimately found that plaintiff was not disabled during the relevant period.  Dkt. 6-2, at 21.  The

9    Appeals Council denied review of the ALJ's decision (Dkt. 6-2, at 1), and plaintiff brought suit

10   in this Court.

11

12                                      **DISCUSSION**

13        Plaintiff argues that the ALJ erred in his discussion of the medical opinion evidence by

14   failing to give any specific and legitimate reason to reject the opinions of Jeremy Senske, a

15   psychologist who examined plaintiff.  Dkt. 8, at 1.

16        The Senske opinion is from September 2017 and includes a functional assessment that

17   plaintiff's ability to reason was "intact but slowed due to poor concentration and depression" and

18   that his abilities to understand, to use his memory to solve problems, to sustain concentration and

19   persistence, and to socially interact were "impaired."  Dkt. 6-7, at 177.  His "adaptation" was

20   also "overall impaired due to severe depression and anxiety and physical functional limitations."

21   Dkt. 6-7, at 177.  This opinion was controverted by a reviewing Agency doctor, who opined that

22   plaintiff did not have more "than mild limitations from mental impairment."  Dkt. 6-3, at 8.

23

24

1    The Court begins by analyzing the appropriate standard of review—an issue heavily

2    disputed by the parties.

3    **I.  Standard of Review**

4        **A.  Ninth Circuit Precedent and the pre-2017 Regulations**

5        The Ninth Circuit's hierarchy of medical source evidence predates the Commissioner's

6    1991 regulations codifying such a hierarchy.  In 1989, Ninth Circuit set forth the now-familiar

7    rules for evaluating treating, examining, and reviewing doctors' opinions:

8        We afford greater weight to a treating physician's opinion because "he is employed
         to cure and has a greater opportunity to know and observe the patient as an
9        individual.". . .   The treating physician's opinion is not, however, necessarily
         conclusive as to either a physical condition or the ultimate issue of disability. . . .
10       The ALJ may disregard the treating physician's opinion whether or not that opinion
         is contradicted. . . .   To reject the uncontroverted opinion of a claimant's physician,
11       the ALJ must present clear and convincing reasons for doing so. . . .

12           To reject the opinion of a treating physician which conflicts with that of an
         examining physician, the ALJ must "'make findings setting forth specific,
         legitimate reasons for doing so that are based on substantial evidence in the
13       record[.]'"

14   *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citations omitted).

15       Indeed, as early as 1983, the Ninth Circuit had joined three other circuits in explaining

16   that greater weight must be given to treating doctors' opinions than other medical opinions.  *See*

17   *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1983) (quoting *Bowman v. Heckler*, 706 F.2d

18   564, 568 & n.3 (5th Cir. 1983)).   And in 1984, the Ninth Circuit made clear that a non-

19   examining, non-treating doctor's opinion is entitled to the least weight of all.  *See Millner v.*

20   *Schweiker*, 725 F.2d 243, 245 (9th Cir. 1984).

21       In 1991, the regulations were amended to include a hierarchy for physicians' opinions

22   that was similar to the Ninth Circuit's rule.  *See* former 20 C.F.R. § 404.1527 (1992), *as*

23   *amended by* 56 Fed. Reg. 36932-01, 1991 WL 142361, at **36960–62 (Aug. 1, 1991).  The

24

Administration explained that "judicial decisions in several circuits pointed to a need for a clear policy statement that would encourage uniformity of adjudication and provide the public and the courts with a definitive explanation of our policy on weighing treating source opinions." *Id.* at *36934. The Administration looked to circuit courts—who generally agreed that treating sources' evidence should be given the most value and that the Administration had to give good reasons for rejecting such evidence—for guidance in developing the hierarchy. *See id.*

Then, in 2017, the Commissioner re-worked these standards for evaluating medical evidence. For applications filed after March 26, 2017, such as plaintiff's application, the Commissioner abolished its former hierarchy for medical evidence. Now, the Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources." 20 C.F.R. § 404.1520c. Instead—

> [w]hen a medical source provides one or more medical opinions . . . , we will consider those medical opinions . . . together using the factors listed in [20 C.F.R. § 404.1520c(c)(1)–(5)], as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . [is] supportability ([20 C.F.R. § 404.1520c(c)(1)]) and consistency ([20 C.F.R. § 404.1520c(c)(2)]). We will articulate how we considered the medical opinions . . . in your claim according to [20 C.F.R. § 404.1520c(b)].

20 C.F.R. § 404.1520c(a).

Thus, although Ninth Circuit precedent defers to treating doctors' opinions on the basis that a treating doctor "is employed to cure and has a greater opportunity to know and observe the patient as an individual" (*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)), the new regulations no longer defer to treating doctors' opinions. *Compare* 20 C.F.R. § 404.1520c (2017), *with* former 20 C.F.R. § 404.1527(d) (1992). And although the Ninth Circuit gives more weight to examining source opinions than opinions from sources who merely reviewed records

1  (*see Lester*, 81 F.3d at 830), the new regulations no longer defer to examining doctors' opinions,

2  either.  *Compare* 20 C.F.R. § 404.1520c *with* former 20 C.F.R. § 404.1526(c)(1) (1992).

3      The parties dispute the relevance of the regulatory amendments.  The Commissioner

4  argues that the new standard for evaluating medical opinions in 1520c is relevant because it

5  effectively supplants the rule of deference to treating, and to a lesser extent, examining doctors

6  instead of reviewing doctors.  *See* Dkt. 14, at 3, 8; *see also Lester*, 81 F.3d at 831.  Plaintiff

7  argues that a revision to the Social Security Administration's "own review" guidelines "has no

8  authority to alter the standard established in the [Ninth] Circuit for determining the weight of

9  different sources of medical opinion."  Dkt. 17, at 1.  Thus the question presented is whether the

10  new *regulatory* scheme affects the *judicial* standard of review—a question not yet addressed by

11  the Ninth Circuit or any District Court within this circuit.

12      Only a few cases have even involved claims to which the amendments would apply.  In

13  one, without explanation, the Court found that an ALJ's rationale failed because it both did not

14  comply with 1520c and because it did not include any specific, legitimate reason.  *See Joseph M.*

15  *R. v. Comm'r of Soc. Sec.*, No. 3:18-CV-01779-BR, 2019 WL 4279027, at *8 (D. Or. Sept. 10,

16  2019).  And in *Clausen v. Cmm'r*, the Court applied the specific and legitimate standard to

17  controverted physician's opinions in a post-March 2017 claim, but without addressing whether

18  this standard was viable in light of the amendments.  *See* No. 1:17-CV-01484-SAB, 2019 WL

19  498989, at *7, *15 n.6 (E.D. Cal. Feb. 8, 2019); *accord Marcus V. v. Berryhill*, No. SACV 17-

20  1787-KS, 2018 WL 6697886, at *8–*9 (C.D. Cal. Dec. 20, 2018) (reversing and remanding a

21  post-2017 claim on the basis of failure to articulate reasons to reject a controverted opinion and

22  citing both 1520c and the specific and legitimate standard).  The parties do not provide—and this

23

24

1    Court is unaware of—any authority in this Circuit addressing the question presented here.  The

2    Court analyzes this issue in the next section.

3                                    **B.  *Chevron* Deference**

4         Where an agency has jurisdiction to administer an ambiguous statute, the Court must

5    defer to the agency's reasonable construction of the statute.  *Nat'l Cable & Telecommunications*

6    *Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (citing *Chevron, U.S.A., Inc. v. Nat'l*

7    *Res. Defense Council, Inc.*, 467 U.S. 837, 865–66 & n.11 (1984)).  "A court's prior judicial

8    construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference

9    only if the prior court decision holds that its construction follows from the unambiguous terms of

10   the statute and thus leaves no room for agency discretion."  *Id.* at 982.  As relevant in this case,

11   42 U.S.C. § 405(a) delegates to the Commissioner—

12           full power and authority to make rules and regulations and to establish procedures,
         not inconsistent with the provisions of this subchapter, which are necessary or
13       appropriate to carry out such provisions, and shall adopt reasonable and proper rules
         and *regulations to regulate and provide for the nature and extent of the proofs and*
14       *evidence and the method of taking and furnishing the same* in order to establish the
         right to benefits hereunder.

15

16   (Emphasis added.)  *See also Schisler v. Sullivan*, 3 F.3d 563, 567 (9th Cir. 1993) (holding that

17   regulations about the weight to give to medical opinions are promulgated under § 405(a)'s

     authority).

18

19        Moreover, § 405(g) provides for judicial review of a Commissioner's final decision and

20   sets forth the standard of review as—

21           The findings of the Commissioner . . . as to any fact, if supported by substantial
         evidence, shall be conclusive, and where a claim has been denied by the
22       Commissioner . . . the court shall review *only the question of conformity with such*
         *regulations prescribed under subsection (a) of this section, the court shall review*
23       *only the question of conformity with such regulations and the validity of such*
         *regulations.*

24

1    (Emphasis added.)  That is, the Court reviews whether substantial evidence supports factual

2    findings, whether the Commissioner followed its own rules, and whether those rules are valid or

3    are arbitrary, capricious, or in excess of the Commissioner's statutory grant of authority.  *See*

4    *Bowen v. Yuckert*, 482 U.S. 137, 145 (2d Cir. 1993); *Campbell*, 461 U.S. at 466.

5            Here, the Commissioner has promulgated new regulations about the standards for

6    evaluating medical opinion evidence as authorized by § 405(a), and the Court is asked to

7    determine whether these new regulations can change Ninth Circuit precedent that greater weight

8    is generally accorded to treating and examining doctors' opinions than to reviewing doctors'

9    opinions.

10           Significantly, plaintiff does not argue that the regulatory changes are arbitrary,

11   capricious, or in excess of the Commissioner's authority.  And under the well-established

12   principles of deference set forth in *Chevron*, the Court must defer to the Commissioner's

13   decision not to give greater weight to treating/examining providers' opinions because this is the

14   type of interpretation of an ambiguous statutory scheme that a court defers to and that the Social

15   Security Act expressly vests in the Commissioner.

16           The Second Circuit has reached a similar conclusion related to the 1991 amendments that

17   codified the hierarchy of medical opinions.  In *Schisler v. Sullivan*, the court was faced with the

18   continuing validity of its own "treating physician's rule"—a rule that went beyond the 1991

19   regulatory amendments.  *See* 3 F.3d 563, 567–68 (2d Cir. 1993).  The Court explained that "the

20   fact that differences may exist between the new regulations and our version of the treating

21   physician rule does not invalidate the regulations.  New regulations at variance with prior

22   judicial precedents are upheld unless 'they exceeded the [Commissioner's] authority [or] are

23   arbitrary or capricious.'"  *Id.* at 568 (quoting *Campbell*, 461 U.S. at 466–68).  The rules were

24

1    reasonable and not arbitrary, capricious, or contrary to statute, so that they were valid and

2    "binding on the courts." *Id.* Similarly, in an unpublished case, the Fourth Circuit held that the

3    1991 regulations superseded its own "treating physician rule" and that former 20 C.F.R. §

4    404.1527 (1992) was "the controlling standard for evaluating the medical opinions." *Stroup v.*

5    *Apfel*, 205 F.3d 1334, 2000 WL 216620, at *5 (4th Cir. 2000). Just so here—to the extent that

6    the 2017 amendments contradict the Ninth Circuit's case law about the weight to give treating,

7    examining, and reviewing source opinions, the new regulations are the appropriate standard to

8    apply.

9         Plaintiffs' argument to the contrary is not persuasive. Plaintiff argues, without citation to

10   authority, that the Agency by regulation "has no authority to alter the standard established in the

11   [Ninth] Circuit for determining the weight of different sources of medical opinion." Dkt. 17, at

12   1. Not so—§ 405(a) delegates setting forth standards for evaluating evidence, including the

13   weight to give different medical opinions, to the Commissioner, and *Chevron* requires this

14   Court's deference to those standards, as explained above.

15        Plaintiff also argues that there is no real inconsistency between the new and old

16   regulations because under the new regulations, "the medical sources' treating relationship is a

17   factor to be considered." Dkt. 17, at 2. But the source's relationship with the claimant

18   (including any treatment relationship and the frequency of examinations)—is a secondary factor,

19   subrogated to the "most important factors": supportability and consistency with other evidence.

20   *See* 20 C.F.R. § 404.1520c(b)(2). Indeed, an ALJ does not even need to explain the other

21   factors, such as a treating relationship, unless the supportability and consistency factors are not

22   dispositive—for instance, if opinions are equally well-supported and equally consistent with the

23   record. *See* 20 C.F.R. § 404.1520c(b)(3). Thus, contrary to Ninth Circuit precedent placing

24

1   primary importance on the source's relationship with the patient, the new regulations place

2   primary importance on the opinion's level of detail and consistency with other evidence.

3          In sum, the 2017 regulatory amendments effectively supersede the Ninth Circuit's

4   precedent deferring to treating and, to a lesser extent, examining source opinions.  In most

5   instances, the nature of the treating relationship is not the primary focus, and the Court should

6   instead analyze whether an ALJ articulated the ALJ's findings about the opinion's consistency

7   with the medical evidence and the opinion's supportability, as outlined in 20 C.F.R. § 404.1520c.

8   However, because only the narrow issue of whether the new regulations change the standard of

9   review for contradicted medical source opinions is before the Court, the undersigned does not

10  address whether the new regulations change the clear and convincing standard of review or other

11  Ninth Circuit precedent unrelated to the deference given to a treating or examining source's

12  opinion.

13         The undersigned turns to whether the ALJ in this case complied with 20 C.F.R. §

14  404.1520c.

15  **II.  Senske Opinion**

16         Regarding Dr. Senske's opinion, the ALJ stated that—

17         [t]he undersigned agrees with Dr. Sensk[e]'s assessment that the claimant is
        'impaired' in several areas, and appropriate limitations have been provided in the
18         [RFC] above.  However, Dr. Sensk[e] failed to quantify the degree of such
        impairment and such limitations were expressed in vocational terms.  To the extent
19         that this evaluation implies greater limitations than those included in the [RFC]
        above, such severity is not supported by the medical records or the narrative portion
20         of Dr. Sensk[e]'s evaluation, which does not note alarming severity of mental status
        examination. . . .

21

22  Dkt. 6-2, at 19.

23

24

1    As noted above, Dr. Senske concluded that plaintiff had an intact but slowed ability to

2    reason due to poor concentration and depression and that plaintiff was impaired in his abilities to

3    understand, to use his memory to solve problems, to sustain concentration and persistence, and to

4    socially interact.  Moreover, plaintiff's "adaptation" was "overall impaired[.]"  Dkt. 6-7, at 177.

5    Dr. Senske's statements were statements about plaintiff's impairment-related limitations

6    in areas related to the mental demands of work (*see* 20 C.F.R. § 404.1513(2)(a)(ii)) rendered by a

7    licensed healthcare worker within the scope of his practice (*see* 20 C.F.R. § 404.1502(d)), so that

8    they were "opinions" under 20 C.F.R. § 404.1520c.  Therefore, the ALJ had to evaluate the

9    persuasiveness of the Senske opinion based on the "supportability and consistency factors" set

10   forth in 20 C.F.R. § 404.1520c(c).  *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our

11   determination or decision how persuasive we find *all of the medical opinions* and all of the prior

12   administrative medical findings in your case record."  (Emphasis added)).  The ALJ failed to do

13   so in two regards—each a separate ground to reverse the ALJ's decision.

14   First, regarding ""supportability"—the relevance of the "objective medical evidence and

15   supporting explanations presented by a medical source" (20 C.F.R. § 404.1520c(c)(1))—the ALJ

16   referenced only Dr. Senske's mental status examination and alluded vaguely to "medical

17   records."  Of note, the ALJ largely ignored pages of other findings that Dr. Senske included as

18   well as his reference to "poor concentration and depression" and "severe depression and anxiety

19   and physical functional limitations" as the basis for certain limitations.  And the ALJ's cursory

20   reference to "medical records" is inadequate to allow the Court to review the basis for the ALJ's

21   decision.  *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("[W]e may not take a

22   general finding . . . and comb the administrative record to find specific conflicts.").

23

24

1    The ALJ singled out the mental status examination performed by Dr. Senske, focusing on

2    observations that supported the ALJ's ultimate conclusion.  The ALJ did not discuss the atypical

3    aspects of Dr. Senske's mental status examination of plaintiff that supported his opinions—for

4    instance, that plaintiff reported a variable mood with daily anxiety and depressed mood "with

5    congruent affect," that plaintiff was "unable to recall any objects after a five minute delay," that

6    he did not have an intact fund of knowledge, and that he could not count by serial sevens.  *See*

7    Dkt. 6-7, at 176.  Substantial evidence does not support the ALJ's findings because rather than

8    appropriately taking into account Dr. Senske's specialized training and judgment that informed

9    the mental status examination, the ALJ improperly substituted his own lay conclusions about the

10   mental status examination findings.  *See, e.g.*, *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.

11   1990); *see also* Paula T. Trzepacz & Robert W. Baker, *The Psychiatric Mental Status*

12   *Examination* 3 (Oxford University Press 1993) (Although "anyone can have a conversation with

13   a patient, . . . appropriate knowledge, vocabulary, and skills can elevate the clinician's

14   'conversation' to a 'mental status examination.'").

15      Second, regarding "consistency"—the degree to which the opinion was "consistent . . .

16   with the evidence from *other medical sources and nonmedical sources* in the claim"[2] (20 C.F.R.

17   § 404.1520c(c)(2) (emphasis added))—the ALJ did not articulate his analysis of this factor at all

18   in his discussion of Dr. Senske's opinion.  *But see* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will

19   explain how we considered the supportability and consistency factors for a medical source's

20   medical opinions . . . in your determination or decision.").

21

22

23      [2] *See also* 20 C.F.R. § 404.1502(d) (a medical source is a licensed health care worker,
     and a nonmedical source is a person such as the claimant, education or agency personnel, an
24   acquaintance, or a relative)).

1    Thus, the ALJ erred in his evaluation of the Senske opinion. The Commissioner does not

2    argue that the ALJ complied with 1520c in his evaluation of the Senkse opinion, but instead

3    attempts to characterize this as harmless error on the basis that the ALJ incorporated Dr.

4    Senske's limitations into the RFC. *See* Dkt. 14, at 9; Dkt. 18. But this is not the case—the ALJ

5    included nothing in the RFC to account for concentration, persistence, or adaptation limitations.

6    *See, e.g.*, *Brink v. Cmm'r*, 343 Fed. App'x 211, 212 (9th Cir. 2009) (distinguishing *Stubbs-*

7    *Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2006)). Had the ALJ not erred, the RFC could have

8    included greater limitations, and the outcome could well have differed. Therefore, the error was

9    not harmless.

10    **IV. Remedy**

11    As noted, the undersigned finds harmful error in the evaluation of Dr. Senske's opinion.

12    This opinion included greater restrictions than those in the RFC, specifically concentration,

13    persistence, and adaptation impairments. *See* Dkt. 6-7, at 177. However, a remand for an award

14    of benefits is not appropriate because further factual findings would be necessary to translate

15    these limitations into concrete restrictions in the RFC. *See Treichler v. Cmm'r*, 775 F.3d 1090,

16    1101 (9th Cir. 2014).

17    The error in evaluating Dr. Senske's opinion affects the evaluation of the persuasiveness

18    of all the medical opinion evidence. *See* 20 C.F.R. § 1520c(c)(2) ("The more consistent a

19    medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

20    medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

21    or prior administrative medical finding(s) will be."). Thus, the undersigned recommends a

22    remand for the ALJ to re-consider the medical opinion evidence of record—including the Brooks

23    opinion—after properly evaluating Dr. Senke's opinion. The undersigned does not address

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 13

1  plaintiff's arguments about error in evaluation of other medical opinions since the appropriate

2  remedy is to remand to the ALJ to re-consider all the medical opinion evidence.

3

4                                    <u>CONCLUSION</u>

5         Based on these reasons, and the relevant record, the undersigned recommends that this

6  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to

7  the Commissioner for re-evaluation of the medical opinion evidence.  Judgement should be for

8  the plaintiff, and the case should be closed.

9         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

10  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

11  6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

12  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

13  imposed by Rule 72(b), the clerk is directed to set the matter for consideration on March 6, 2020,

14  as noted in the caption.

15         Dated this 14th day of February, 2020.

16

17

18                                                          J. Richard Creatura
                                                            United States Magistrate Judge
19

20

21

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 14